VICTOR H. BRIGGS *vs.* JEAN DE PEIFFER & another.

Suffolk. December 12, 1912. — February 26, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract,* Construction, Implied in law. *Damages,* In contract. *Practice, Civil,* Exceptions, Findings of judge without jury.

In an action upon a contract in writing it appeared that according to the provisions of the contract a certain portion of the wages received by the plaintiff from a company owned by the defendant was paid to the defendant to apply toward purchasing for the plaintiff an interest in the company. The contract also provided that, upon a breach of it by the defendant, which occurred, the defendant, "in addition to returning and paying to the" plaintiff "all amounts due to him under the" contract, should "forfeit and pay to him an amount equal to the amount which" had, "to the date of the breach, accrued to" him under certain terms of the contract relating to a division of profits. A judge, who heard the case without a jury, found that there were no profits and found for the plaintiff in the amount of the payments which had been made from his wages to the defendant according to the contract. He also ruled that the provision of the contract as to a forfeiture of profits provided "for a penalty . . . as distinguished from liquidated damages." The defendant alleged exceptions. *Held,* that the judge properly interpreted the contract with regard to what was due to the plaintiff, and that his ruling as to liquidated damages was sufficiently favorable to the defendant.

Where one party to a contract under seal has received from the other party sums of money under the terms of the contract and, by reason of his having broken the contract, he no longer is entitled to retain the money, the other party can recover it in an action for money had and received.

Where, at the close of the evidence at a trial before a judge without a jury, the defendant asks the judge to rule that, upon all the evidence, the plaintiff cannot recover on a certain item in the declaration and the judge refuses so to rule and finds for the plaintiff on that item, giving in a memorandum an erroneous reason for his finding to which the defendant takes no exception, an exception by the defendant to the refusal to rule as requested will not be sustained if, upon the evidence and for a reason other than that given by the judge, a finding for the plaintiff would have been warranted.

CONTRACT, against Jean and Bertha S. De Peiffer, with a declaration in three counts. Writ dated October 3, 1907.

The first count of the declaration was for $180 had and received by the defendants to the use of the plaintiff at various times between July 14 and October 1, 1905. The second count was upon a contract in writing and under seal, described in the

opinion, under the terms of which a portion of wages of $40 per week, paid to the plaintiff by the Foreign Language Press Company, a corporation controlled by the defendants, was paid each week to the defendants toward the purchase of an interest in the corporation. The third count was upon an account annexed, the items of which were as follows:

"(1) To amount paid to Jean De Peiffer and Bertha S. DePeiffer from July 14, 1905 to October 1, 1905, for eleven weeks at the rate of $15 per week . . . . . . . . . . . . . . . .  . . . . .	$165.00

(2) To amount paid to Jean De Peiffer and Bertha S. De Peiffer from October 1, 1905 to October 1, 1906, fifty-two weeks at $15 per week . .	780.00

(3) To amount paid to Jean De Peiffer and Bertha S. De Peiffer from October 1, 1906, to April 24, 1907, 29 weeks at $10 per week . . . . . .	290.00

(4) To amount due as forfeiture under written agreement, . . . . . . . . . . . . . . . . . . . . .	1235.00

Total. . . . . . . . . . . . . . . . .	$2470.00."

The case was heard by *Crosby*, J., without a jury.

The entire text of the ninth paragraph of the contract, referred to in the opinion, was as follows:

" 9. That the parties of the first part [the defendants] shall, upon the failure to conform to the terms of this agreement, and shall also upon a breach of the said contract of employment between the Foreign Language Press Company and the party of the second part [the plaintiff] herein, if the said breach is made by them or committed by the said Foreign Language Press Company pay and forfeit to the said party of the second part in addition to returning to him all payments made by him on account of the purchase of stock an amount equal to that which he has paid to them should such breach occur within a year from the date hereof. Should such breach occur after the expiration of one year from the date, hereof, then the parties of the first part shall in addition ·to returning and paying to the party of the second part all amounts due to him under the terms of this contract, forfeit and pay to him an amount equal to the amount

which has to the date of the breach, accrued to the party of the second part from or under the terms of this agreement or the aforementioned agreement of the party of the second part with the Foreign Language Press Company relative to the paying to the party of the second part of one-third (⅓) of the net profits of the said Foreign Language Press Company and upon such breach by either the parties of the first part herein or the said Foreign Language Press Company the party of the second part shall be released from any further obligation to purchase stock under the terms of this agreement."

The material facts are stated in the opinion.

At the close of the evidence, the defendants in a series of requests asked the judge to rule that on all the evidence the plaintiff could not recover on the first, the second, or on any item of the third count, and also to give the following rulings among others:

"8. The plaintiff can recover nothing under his third count on items two, three and four of the account annexed thereto, if it appears that he relies in support thereof upon a breach of contract under seal."

"10. That the following words of paragraph nine of the contract declared on in count two of the plaintiff's declaration to wit: ' The amount which has to the date of the breach accrued to the party of the second part from or under the terms of this agreement or the aforementioned agreement of the party of the second part with the Foreign Language Press Company relative to the paying to the party of the second part one-third of the net profits of the said Foreign Language Press Company,' mean and relate to nothing beyond the amount of the said one-third of the net profits, if any, and do not warrant including in that ' amount' any of the specified weekly payments which may have been paid to the defendants as provided by this contract."

The judge found that the plaintiff was discharged from his employment with the Foreign Language Press Company and that the discharge was in violation of the terms of his contract with it and was without justification or legal excuse.

He also found that no profits were made or earned by the company, so that the plaintiff was not entitled to recover anything under that part of paragraph nine which referred to profits.

He also found and ruled that "paragraph nine also provides that if the contract is broken without fault on the part of the plaintiff, and such breach occurs after the expiration of one year from October 1, 1905, then the defendants shall, in addition to returning and paying to the plaintiff all amounts due him under the terms of the contract, also forfeit and pay to him an amount equal to the amount which has to the date of the breach accrued to the party of the second part from and under the terms of the agreement. I construe this latter clause of the paragraph as providing for a penalty upon breach of the contract, as distinguished from liquidated damages, and I find that the amount which the plaintiff is entitled to recover is $1,250 with interest as above, in full of all damages sustained by him, and that the plaintiff is not entitled to recover any additional amount under the forfeiture clause of the contract above referred to."

He accordingly found "that under the ninth paragraph of said contract between the plaintiff and the defendants, the plaintiff is entitled to recover from the defendants, . . . the amount of wages earned by the plaintiff and paid to the defendants, as follows:

| | |
|---|---:|
| "Amount paid to defendants between July 14, 1905, and Oct. 1, 1905 . . . . . . . . . . . . . . | $180.00 |
| Amount paid to defendants between Oct. 1, 1905, and Oct. 1, 1906, 52 weeks at $15 per week . . | 780.00 |
| Amount paid to defendants from Oct. 1, 1906, to Apr. 24, 1907, 29 weeks at $10.00 per week . . . | 290.00 |
| Total . . . . . . . . . . . . . . . . . | $1250.00 |
| With interest from the date of the writ . . . . . | 300.00 |
| Total . . . . . . . . . . . . . . . . . | $1550.00" |

He accordingly found for the plaintiff in the sum of $1,550; and the defendants alleged exceptions.

*R. W. Light,* for the defendants.

*E. N. Hill,* (*J. Nelson* with him,) for the plaintiff.

HAMMOND, J. 1. As to the question of liability. At the trial it appeared that the plaintiff had been discharged from the employment of the Foreign Language Press Company, hereinafter called

the press company; and the question of liability finally turned upon whether the discharge was for good cause. Upon this issue the judge before whom without a jury the case was tried found in favor of the plaintiff. Against this finding the defendants strongly contend. But the evidence was conflicting and would have warranted a finding either way, and hence that made by the trial judge must stand.

2. As to the damages. It appeared that the defendant Jean was the president and sole manager of the press company, and that he and his wife owned the stock, and that he represented her in the business and in the negotiations with the plaintiff.

The plaintiff testified that he first worked for the press company about April, 1905; that he was hired by the defendant Jean, that he was offered $25 a week with the agreement that if he proved satisfactory he would be given an opportunity to acquire an interest in the business, and to that end would be given an increase "later," that he worked for the press company at that price for two or three weeks, at the end of which time the defendants agreed to give him $35 a week, of which the sum of $25 was to be received by him as before, and the remaining sum of $10 was to be "left with the defendants toward an interest in the business under an agreement which was to come later."

The plaintiff further testified, "When my pay was raised, I thought that I could spare that amount toward purchasing an interest in the business. It was not raised with that intention. The raise came and the wages would have been paid to me unless of my own initiative I wished to acquire an interest in the business. The business looked good to me and I had been there some little time and I talked the matter over with Mr. De Peiffer about acquiring an interest in the business;" that on the day of his engagement he had "looked over the plant and sized up the situation;" and that he thought that the proposition would be all right; "that the increase was not for the purchase of stock, but was to acquire an interest, and it was not until the contract was made out that the final arrangement was made. He had an interview with the other defendant, who informed him that Mr. De Peiffer represented her in the business, and he was authorized to act for her in all matters relating to it."

Under this arrangement the plaintiff was at work when the con-

tracts of October 1, 1905, were executed, the first, being between the plaintiff and the defendants, prescribing the terms under which the defendants were to convey to the plaintiff shares of the stock, and the second being between the plaintiff and the press company, prescribing the terms under which the plaintiff should continue in the employ of the press company. Briefly summarized, these contracts construed together as parts of one general scheme provided that the plaintiff should remain with the press company for four years from October 1, 1905, and should receive a weekly compensation of $40, of which the sum of $25 should be paid by the press company to him and the sum of $15 to the defendants for him, and in addition the press company was to pay on his account one third of the net annual profits, not exceeding a certain sum, to the defendants; that the defendants should from time to time convey to the plaintiff shares of stock in the press company as and when thus paid for.

Under this arrangement the parties went on until October 1, 1906, when, by supplemental contracts, some changes were made, the only one material to this inquiry being that the sum to be paid weekly to the defendants was changed from $15 to $10. With this change in the contracts, the parties continued until April 22, 1907, when there was a breach by the unjustifiable discharge of the plaintiff by the press company, and the plaintiff became entitled to damages therefor.

The rules of damages in case of a breach of the contract are set out respectively in the eighth and ninth sections. If the breach be within the first year, then the plaintiff, if he be the delinquent, "waives and forfeits all rights" accrued to him by the payment of the weekly sum of $15. If either of the other parties is the delinquent, then the defendants must return to the plaintiff the $15 per week which has been paid by the press company to them on his account, and in addition an equal amount, that is to say, the one who is to be held answerable for the breach is to lose the $15 per week up to the time of the breach, the plaintiff because he gets nothing for it, the defendants because they must not only return to the plaintiff that sum, but an additional equal amount. In this respect the contract is equal. Nothing is said about the profits, because if the breach occurred within the first year none would have been paid to the defendants.

But the breach occurred after the first year. The contract (eighth section) provides that in that case, if the breach shall be by the plaintiff, then he loses all rights to the profits which shall have been paid on his account to the defendants, but he shall not forfeit the weekly pay. That is to be "refunded to him by the . . . [defendants] . . . without interest." If either of the other parties is the delinquent, then (section 9) the defendants "shall in addition to returning and paying to . . . [the plaintiff] . . . all amounts due to him under the terms of this contract, forfeit and pay to him an amount equal to the anount which has to the date of the breach, accrued to the" plaintiff under the terms of the agreement relative to the payment of net profits to the defendants on his account by the press company. That is, if the plaintiff be the delinquent he shall lose his net profits. If either of the other parties is the delinquent, then the defendants shall not only pay over the net profits theretofore received by them, but in addition thereto a sum equal to such profits and also the weekly amount received by them. If therefore the breach occur after the year, then the one answerable shall lose only the amount equal to the amount of profits paid by the press company to the defendants on account of the plaintiff. As thus construed the contract seems even. The contract in this respect was rightly interpreted by the trial judge; and his ruling that the sums to be forfeited were not liquidated damages was sufficiently favorable to the defendants.

Under the terms of the contract the defendants became answerable to the plaintiff for the money paid to them on the plaintiff's account. The purpose for which it had been paid to them had ceased. They held it without right, and the common count for money had and received well lies to recover the money received. And that is so even if it comes into the hands of the defendants under a written or sealed contract. There was nothing to be done except the payment of the money. See *Bassett* v. *Sanborn,* 9 Cush. 58; *Glidden* v. *Child,* 122 Mass. 433; *Claflin* v. *Godfrey,* 21 Pick. 1, 6.

The only doubt is as to the sum paid before the written contract of October 1, 1905. No part of that money is alluded to in the writing; and if the plaintiff's right to recover rested upon the writing alone it would be difficult to find any satisfactory ground of recovery. The defendants however asked the judge to rule that

upon the evidence and pleadings the sum could not be recovered. That ruling could not have been given. The judge might well have found that even although this sum was not covered by the contract yet that it was held by the defendants under conditions precisely the same, or in other words that when the contract of October 1 was executed, the terms under which the defendants held this money were settled by virtue not of the written contract but of the understanding between the parties at the time of the agreement that the payment should be made. The defendants took no exception to the ground upon which the trial judge based his finding. The only exception was to the refusal of the judge to give the ruling that upon all the evidence there could be no recovery for this item. The defendants were not harmed by this refusal.

It is unnecessary to go over the other exceptions in detail. It is sufficient to say that after examination we see no error in the manner in which the court dealt with them.

*Exceptions overruled.*